6. <u>Conditions Precedent</u>. The obligation of the Purchaser hereunder to purchase the Shares from the Company is subject to the satisfaction or waiver of each of the following conditions:

6.1 <u>Certain Actions</u>. No preliminary or permanent injunction or other order will have been issued by any court of competent jurisdiction or any regulatory body preventing consummation of the transactions contemplated by this Agreement and no action will have been commenced or threatened against the Company or the Purchaser or any of their respective affiliates, associates, officers or directors seeking to prevent or challenge the transactions contemplated by this Agreement or seeking damages arising from the transactions contemplated by this Agreement.

6.2 <u>Representations and Warranties</u>. All representations and warranties of the Company contained herein will be true and correct in all material respects on and as of the Closing Date as if made on and as of the Closing Date (except to the extent that a representation specifically speaks to an earlier date, in which case such representation shall continue to remain true and correct as of the Closing Date with respect to such earlier date), and the Purchaser will have received a certificate signed by a responsible officer of the Company to such effect.

6.3 <u>Related Agreements</u>. The transactions contemplated by this Agreement, the Registration Rights Agreement, the Purchase and Sale and Exploration and Development Agreement, the Exploration and Development Agreement covering a thirteen county area in Texas and related conveyances, documents and agreements contemplated thereby (collectively, the "Related Agreements") among Gastar Exploration Ltd. and Chesapeake Energy Corporation and one or more of their respective subsidiaries are being consummated pursuant to that certain Letter of Intent dated September 16, 2005 executed between the parties, as amended on October 27, 2005. The Letter of Intent reflects interdependent provisions reflecting the agreement of the parties to the purchase of shares, to purchase certain leasehold interests, the commitment to drill wells, the commitment to form an Area of Mutual Interest, and the commitment by Chesapeake to provide additional drilling rigs for the Hilltop Prospect development. Consummation of the entirety of the transactions is a condition precedent under all of the Related Agreements. While certain values for accounting purposes may be placed on the various components of the transaction, the parties acknowledge and agree that the consideration attributable to the matters covered in the Related Agreements were not derived separately but were negotiated as a whole and that the transactions would not be consummated without each of the matters covered by the Related Agreements being completed.

6.4 <u>Registration Rights Agreement</u>. The Company shall have executed and delivered to the Purchaser the Registration Rights Agreement.

6.5 <u>Material Adverse Change</u>. There shall not have occurred since the date hereof any material adverse change in the financial condition, results of operations or business of the Company excluding any change or effect resulting from general economic conditions, any occurrence or condition affecting the oil and gas industry generally or any occurrence or condition arising out of the transactions contemplated by this Agreement or the public announcement thereof.

COMMON SHARE PURCHASE AGREEMENT

6.6     Company Requirements.   All statutory, regulatory, listing agency and other requirements for the valid consummation by the Company of the transactions contemplated by this Agreement shall have been fulfilled and all authorizations, consents and approvals of all governmental or other authorities required to be obtained in order to permit consummation by the Company of the transactions contemplated by this Agreement shall have been obtained. The Company shall have made all filings under all applicable U.S. and Canadian federal, state, provincial, territorial and foreign securities laws necessary to consummate the issuance of the Shares pursuant to this Agreement in compliance with such laws.

6.7     Opinions of Counsel.   If requested by the Purchaser, the Purchaser shall have received an opinion of Canadian counsel for the Company in form, scope and substance reasonably satisfactory to the Purchaser.

6.8     Delivery of Shares.   The Company shall have issued and delivered the Shares as directed in writing by the Purchaser.

6.9     Evidence of Authority; Good Standing.    The Company shall have delivered to the Purchaser a secretary's certificate, dated as of the Closing Date attaching certificates of good standing for the Company and each of its subsidiaries as of a recent date and certifying the resolutions of the board of directors of authorizing the Company to execute deliver and perform the transactions contemplated by this Agreement, the Registration Rights Agreement and the Related Agreements.

7.     Miscellaneous.

7.1     Financial Statements and Other Information.   So long as the Purchaser owns at least five percent (5%) of the outstanding capital stock of the Company at any time upon the written request of the Purchaser, the Company will provide to the Purchaser copies of all financial statements and other information provided to any governmental authority, lender, investor, partner, or shareholder.

7.2     Expenses.   Each of the parties will pay their respective costs and expenses (including legal fees) in connection with this Agreement as a result of the transactions contemplated hereby.

7.3     Notices.   All notices and other communications provided for or permitted hereunder must be in writing and will be deemed delivered and received (i) if personally delivered or if delivered by facsimile or courier service, when actually received by the party to whom the notice or communication is sent, or (ii) if deposited with the United States postal service (whether actually received or not), at the close of business on the third business day next following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, addressed to the appropriate party or parties at the address of that party set forth or referred to below (or at such other address as that party may designate by written notice to each other party in accordance herewith):

(a)    if to the Company, to:

      Gastar Exploration Ltd.
      1331 Lamar, Suite 1080
      Houston, Texas 77010
      Attention: Mr. J. Russell Porter
      Fax No.: (713) 739-0458

with a copy (which will not constitute notice for purposes of this Agreement) to:

      Vinson & Elkins
      2300 First City Tower
      1001 Fannin
      Houston, Texas 77002
      Attention: Mr. T. Mark Kelly
      Fax No.: (713) 615-5531

(b)    if to the Purchaser, to:

      Chesapeake Energy Corporation
      6100 North Western Avenue
      Oklahoma City, Oklahoma 73118
      Attention: Mr. Marcus C. Rowland
      Fax No.: (405) 879-9580

      and

      Chesapeake Energy Corporation
      6100 North Western Avenue
      Oklahoma City, Oklahoma 73118
      Attention: Mr. Douglas J. Jacobson
      Fax No.: (405) 879-9546

with a copy (which will not constitute notice for purposes of this Agreement) to:

      Commercial Law Group, P.C.
      2725 Oklahoma Tower
      210 Park Avenue
      Oklahoma City, Oklahoma 73102-5643
      Attention: Mr. Ray Lees
      Fax No.: (405) 232-5553

    7.4    Entire Agreement; Amendments.  This Agreement, the Registration Rights Agreement, the Related Agreements, the schedules hereto and thereto and the documents specifically referred to herein and therein or executed contemporaneously therewith constitute the entire agreement, understanding, representations and warranties of the parties hereto related

COMMON SHARE PURCHASE AGREEMENT

to the subject matter hereof and supersede all prior agreements of the parties related to the subject matter hereof. This Agreement may be amended only by an instrument in writing executed by both of the parties hereto.

7.5     Assignment.   This Agreement may be assigned at any time by the Purchaser to an Affiliate (as defined in the Registration Rights Agreement) without the prior consent of the Company so long as the party to whom this Agreement is assigned agrees in writing to be bound by all terms and conditions contained herein. No other assignment may be made by the Purchaser without the Company's prior written consent. Subject to the provisions of this Section 7.5, this Agreement will inure to the benefit of and be binding on the successors and assigns of each of the parties hereto.

7.6     No Third Party Rights.   Nothing in this Agreement, express or implied, is intended to confer upon any person, other than the parties hereto and their respective successors and assigns, any rights or remedies under or by reason of this Agreement or to constitute such person a third party beneficiary of this Agreement.

7.7     Counterparts.   This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all of which taken together shall constitute one and the same agreement.

7.8     Headings; Interpretation.   The headings of the various sections of this Agreement have been inserted for convenience of reference only and shall not limit or affect the meaning or interpretation of this Agreement. Whenever the context requires, references in this Agreement to the singular number shall include the plural and vice versa, and words denoting gender shall include the masculine, feminine and neuter. This Agreement uses the words "herein," "hereof," "hereto" and "hereunder" and words of similar import to refer to this Agreement as a whole and not to any particular provision of this Agreement. As used in this Agreement, the word "including" (and, with correlative meaning, the word "include") means including without limiting the generality of any description preceding that word, and the verbs "shall" and "will" are used interchangeably and have the same meaning.

7.9     Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to any principles of conflicts of law thereof that would result in the application of the laws of any other jurisdiction.

7.10    Arbitration.

(a)     The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between executives who have authority to settle the controversy and who are at a higher level of management than the persons with direct responsibility for administration of this Agreement. Any party may give the other party written notice of any dispute not resolved in the normal course of business. Within 15 days after delivery of the notice, the receiving party shall submit to the other party a written response. The notice and response shall include (a) a statement of that party's position and a summary of arguments supporting that position, and (b) the name and title of the executive who will represent that party and of any other person who

will accompany the executive. Within 30 days after delivery of the initial notice, the executives of both parties shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored. All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

(b)    If the dispute has not been resolved by negotiation as provided herein within 45 days after delivery of the initial notice of negotiation, the parties shall endeavor to settle the dispute by mediation under the CPR Mediation Procedure in effect on the date of this Agreement, provided, however, that if one party fails to participate in the negotiation as provided herein, the other party can initiate mediation prior to the expiration of the 45 days. Unless otherwise agreed, the parties will select a mediator from the CPR Panels of Distinguished Neutrals.

(c)    Any dispute arising out of or relating to this Agreement, including the breach, termination or validity thereof, that has not been resolved by mediation as provided herein within 45 days after initiation of the mediation procedure, shall be finally resolved by arbitration in accordance with the CPR Rules for Non-Administered Arbitration in effect on the date of this Agreement, by three independent and impartial arbitrators, of whom each party shall designate one; provided, however, that if one party fails to participate in either the negotiation or mediation as agreed herein, the other party can commence arbitration prior to the expiration of the time periods set forth above. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The place of arbitration shall be Houston, Texas. The arbitrators are not empowered to award damages in excess of compensatory damages and each party expressly waives and foregoes any right to punitive, exemplary or similar damages unless a statute requires that compensatory damages be increased in a specified manner.

(d)    Each party is required to continue to perform its obligations under this Agreement pending final resolution of any dispute arising out of or relating to this Agreement, unless to do so would be impossible or impractical.

7.11    <u>Attorney Fees</u>.  Without limiting the arbitrators' right to award costs and/or attorneys' fees pursuant to Section 7.10 hereof, if any action at law or in equity is brought to secure injunctive relief, enforce an arbitration award or, subject to Section 7.10 hereof, enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which it may be entitled.

7.12    <u>Severability</u>.  In case any one or more of the provisions contained in this Agreement or any application thereof shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and other applications thereof shall not in any way be affected or impaired thereby.

7.13    JOINT ACKNOWLEDGMENT Error! Bookmark not defined..  **THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

[SIGNATURE PAGE FOLLOWS]

COMMON SHARE PURCHASE AGREEMENT

IN WITNESS WHEREOF, this Agreement has been duly executed by the Company and by the Purchaser by their respective officers duly authorized effective as of the date first above written.

THE COMPANY:

GASTAR EXPLORATION LTD., an Alberta corporation

By: _____
     J. Russell Porter, President and CEO


THE PURCHASER:

CHESAPEAKE ENERGY CORPORATION, an Oklahoma corporation

By: _____
     Douglas J. Jacobson, Senior Vice President

## SCHEDULE 3.2

### Capitalization; Ownership of Stock

A.    Demand or Piggy-back Registration Rights

1.    $30,000,000 aggregate principal amount privately placed 9.75% Convertible Senior Unsecured Subordinated Debentures issued by the Company on November 15-16, 2004, due November 20, 2009, convertible at any time at the option of the holders at an initial conversion price of US$4.62(C$5.75) (current conversion price $4.38 (CDN $5.45) per share; redeemable by the Company, in whole or in part, at any time after November 12, 2006, at a redemption price equal to par plus accrued and unpaid interest, provided that the volume weighted average trading price of the common shares of the Company on the TSX for at least 20 trading days in any consecutive 30 day period ending five trading days prior to the date on which notice of redemption is given exceeds 130% of the conversion price then in effect.

2.    Registration Rights Agreement between the Company and Geostar dated as of June 17, 2005, relating to:

    a.    Purchase and Sale Agreement and Assignment of Interests – Texas Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among Texas Seller and Texas Buyer.

    b.    Purchase and Sale Agreement and Assignment of Interests – Texas Non-Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among Texas Seller and Texas Buyer.

    c.    Purchase and Sale Agreement and Assignment of Interests – Wyoming and Montana Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among the Wyoming/Montana Seller and the Wyoming/Montana Buyer.

    d.    Purchase and Sale Agreement and Assignment of Interests – Wyoming and Montana Non-Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among the Wyoming/Montana Seller and the Wyoming/Montana Buyer.

    e.    August 11, 2005 agreement whereby the Geostar $32.0 million unsecured subordinated note was cancelled and the Company issued 6,373,694 common shares at CDN$3.25 per share and issued a new unsecured note for $15.0 million for the remaining balance to Geostar.

3.    Subscription Agreement for common shares of the Company by Pritchard Capital Partners, L.L.C. and Westwind Partners, Inc. as part of the offering by the Company of 6,617,736 common shares at an issue price of C$3.319 (US$2.65) per share.

2502801.3

4. Registration Rights Agreement between the Company and HFTP Investment L.L.C., Gaia Offshore Master Fund, Ltd., Leonardo, L.P., Wayland Recovery Fund, LLC, Wayzata Recovery Fund, LLC, Cyrus Opportunities Fund, L.P., Cyrus Opportunities Fund II, L.P. ("Buyers") dated as of June 16, 2005 related to that certain Securities Purchase Agreement dated as of June 16, 2005 between the Company and Buyers.

B. Options, Warrants, Conversion Rights

1. $30,000,000 aggregate principal amount privately placed 9.75% Convertible Senior Unsecured Subordinated Debentures issued by the Company on November 15-16, 2004, due November 20, 2009, convertible at any time at the option of the holders at an initial conversion price of US$4.62(C$5.75) (current conversion price $4.38 (CDN $5.45) per share; redeemable by the Company, in whole or in part, at any time after November 12, 2006, at a redemption price equal to par plus accrued and unpaid interest, provided that the volume weighted average trading price of the common shares of the Company on the TSX for at least 20 trading days in any consecutive 30 day period ending five trading days prior to the date on which notice of redemption is given exceeds 130% of the conversion price then in effect.

2. 215,844 purchase warrants issued by the Company in favor of Westwind Partners Inc. for the purchase of common shares at C$4.65 per share, expiring at 4:30 PM (Calgary time) on May 12, 2006, evidenced by Warrant Certificate BW-1.

3. 21,948 purchase warrants issued by the Company in favor of Westwind Partners Inc. for the purchase of common shares at C$4.65 per share, expiring at 4:30 PM (Calgary time) on May 12, 2006, evidenced by Warrant Certificate BW-2.

4. 21,948 purchase warrants issued by the Company in favor of Pritchard Capital Partners, L.L.C. for the purchase of common shares at C$4.65 per share, expiring at 4:30 PM (Calgary time) on May 12, 2006, evidenced by Warrant Certificate BW-3.

5. 510,525 purchase warrants issued by the Company in favor of Ingalls & Snyder LLC for the purchase of common shares at US$3.23 per share, expiring at 4:30 PM (Toronto time) on October 8, 2007, evidenced by Warrant Certificate 2004-1A.

6. 1,989,475 purchase warrants issued by the Company in favor of Ingalls & Snyder LLC for the purchase of common shares at US$3.63 per share, expiring at 4:30 PM (Toronto time) on October 8, 2007, evidenced by Warrant Certificate 2004-2.

7. Employee Stock Option Program – 10,974,600 options, issued by the Company on July 18, 2001, at an exercise price of C$2.76, expiring on July 18, 2006, to employees and consultants of the Company, to purchase an aggregate amount of up to 10,974,600 common shares of the Company.

8. Employee Stock Option Program – 700,000 options, issued by the Company on April 26, 2002, at an exercise price of C$2.81, expiring on April 26, 2007, to employees and

2502801.3

consultants of the Company, to purchase an aggregate amount of up to 700,000 common shares of the Company.

9.   Employee Stock Option Program – 825,000 options, issued by the Company on April 20, 2004, at an exercise price of C$3.70, expiring on April 20, 2009, to employees and consultants of the Company, to purchase an aggregate amount of up to 825,000 common shares of the Company, 75,000 of which have expired due to non-vesting for ex-employee.

10.   Employee Stock Option Program – 4,435,000 options, issued by the Company on August 4, 2004, at an exercise price of C$3.41, expiring on August 4, 2009, to employees and consultants of the Company, to purchase an aggregate amount of up to 4,435,000 common shares of the Company, 18,750 of which have expired due to non-vesting for ex-employee.

11.   Employee Stock Option Program – 345,000 options, issued by the Company on June 24, 2005, at an exercise price of C$3.50, expiring on June 24, 2010, to employees and consultants of the Company, to purchase an aggregate amount of up to 345,000 common shares of the Company.

12.   Employee Stock Option Program – 50,000 options, issued by the Company on June 28, 2005, at an exercise price of C$3.40, expiring on June 28, 2010, to employees and consultants of the Company, to purchase an aggregate amount of up to 50,000 common shares of the Company.

13.   Employee Stock Option Program – 150,000 options, issued by the Company on September 7, 2005, at an exercise price of C$3.25, expiring on September 7, 2010, to employees and consultants of the Company, to purchase an aggregate amount of up to 150,000 common shares of the Company.

14.   Employee Stock Option Program – 40,000 options, issued by the Company on September 20, 2005 at an exercise price of $4.00 expiring on September 20, 2010 to employees of the Company, to purchase an aggregate amount of up to 40,000 common shares of the Company.

15.   Employee Stock Option Program – 95,000 options, issued by the Company on October 17, 2005, at an exercise price of C$4.50 expiring on October 17, 2015, to employees of the Company, to purchase an aggregate amount of up to 95,000 common shares of the Company.

16.   Purchase and Sale Agreement and Assignment of Interests – Texas Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among Geostar, First Source Texas, Inc., First Source Bossier, LLC and First Texas Gas LP ("Texas Seller") and the Company, First Texas Development, Inc., Bossier Basin, LLC and First Source Gas, LP ("Texas Buyer").

2502801.3

17. Purchase and Sale Agreement and Assignment of Interests – Texas Non-Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among Texas Seller and Texas Buyer.

18. Purchase and Sale Agreement and Assignment of Interests – Wyoming and Montana Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among Geostar, First Source Wyoming, Inc. and Squaw Creek Development, Inc. ("Wyoming/Montana Seller") and the Company, First Sourcenergy Wyoming, Inc. and Squaw Creek, Inc. ("Wyoming/Montanta Buyer").

19. Purchase and Sale Agreement and Assignment of Interests – Wyoming and Montana Non-Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among the Wyoming/Montana Seller and the Wyoming/Montana Buyer.

20. Option to acquire certain coal mining rights in Victoria, Australia from Geostar pursuant to the LOI.

21. Warrants (listed on Annex 1 hereto) issued in conjunction with:

    Gastar $3.25 Million 10% Senior Notes
    In April 2004, the company sold US$3,250,000 of unsecured notes (the "Notes"). The Notes mature 5 years from the date of issuance (April 2009), bear an annual interest rate of 10% and will be callable after 2 years at 108% of the principal amount. The call premium will reduce to 105% after three years and 101% after four years. In addition, the Notes have attached warrants entitling the holders to acquire up to 232,521 common shares from the Company.

22. Securities Purchase Agreement between the Company and HFTP Investment L.L.C., Gaia Offshore Master Fund, Ltd., Leonardo, L.P., Wayland Recovery Fund, LLC, Wayzata Recovery Fund, LLC, Cyrus Opportunities Fund, L.P., Cyrus Opportunities Fund II, L.P. ("Buyers") dated as of June 16, 2005 requires issuance of additional common shares upon issuance of additional notes to Buyers, and in CDN $714,286 increments upon scheduled additional closing dates on each of the six, twelve and eighteen-month anniversaries of the closing date, valued on a five day weighted average trading price immediately prior to the date of issuance.

C. Phantom Rights Preemptive Rights

    None

2502801.3

ANNEX 1 TO

SCHEDULE 3.2

Additional Warrants

Gastar 10% Subordinated Notes with Warrants

| Note Number | Registered Name and Address | Principal Amount of Note USD$ | Warrant Coverage (20% of investment amount) | Effective Date of Investment | Warrant Strike Price CDN$ | Warrant Strike Price USD$ | Warrants Issuable (1 warrant = 1 share) | Total Warrants (rounded up to nearest whole number) | Note Maturity and Warrant Expiry Date |
|---|---|---|---|---|---|---|---|---|---|
| 3001 | Leo J Hertzog & Jean E Hertzog JTWROS<br>C/o J&L Canterbury Farms LLC<br>301 Oxford Valley Rd 1903-B<br>Yardley PA 19067 | $2,000,000.00 | $400,000.00 | 4/20/2004 | 3.70 | 2.76 | 144,927.54 | 144,928 | 04/19/09 |
| 3002 | Kevin Coccetti<br>825 Townshipline Rd<br>Wycombe PA 18989 | $100,000.00 | $20,000.00 | 4/16/2004 | 3.68 | 2.76 | 7,246.38 | 7,247 | 04/15/09 |
| 3003 | James Hanna & Nancy C Hanna JT TEN<br>6 Eaton Drive<br>North Caldwell NJ 07006 | $100,000.00 | $20,000.00 | 4/23/2004 | 3.77 | 2.79 | 7,168.4588 | 7,169 | 04/22/09 |
| 3004 | John S Poindexter III<br>313 Running Cedar<br>Richmond VA 23229 | $100,000.00 | $20,000.00 | 4/27/2004 | 3.79 | 2.80 | 7,142.8571 | 7,143 | 04/26/09 |
| 3005 | Edward C Droste | $100,000.00 | $20,000.00 | 4/27/2004 | 3.79 | 2.80 | 7,142.8571 | 7,143 | 04/26/09 |

2502801.3

| Note Number | Registered Name and Address | Principal Amount of Note USD$ | Warrant Coverage (20% of investment amount) | Effective Date of Investment | Warrant Strike Price CDN$ | Warrant Strike Price USD$ | Warrants Issuable (1 warrant = 1 share) | Total Warrants (rounded up to nearest whole number) | Note Maturity and Warrant Expiry Date |
|---|---|---|---|---|---|---|---|---|---|
| | 107 Hampton Road Suite 120 | | | | | | | | |
| | Clearwater FL  33759 | | | | | | | | |
| 3006 | Linda G McEwen | $100,000.00 | $20,000.00 | 5/11/2004 | 4.14 | 3.01 | 6,644.5183 | 6,645 | 05/10/09 |
| | 585 Riviera Dr | | | | | | | | |
| | Tampa FL  33606 | | | | | | | | |
| 3007 | Matt Kilen and Sharlene Klein TTEES | $50,000.00 | $10,000.00 | 5/12/2004 | 4.18 | 3.03 | 3,300.3300 | 3,301 | 05/11/09 |
| | Matt and Sharlene Klein Trust U/A Dtd 12-11-92 | | | | | | | | |
| | 14315 Bath Road East | | | | | | | | |
| | Pallyup WA  98374 | | | | | | | | |
| 3008 | Jose C Dominguez Jr MD & Tina Dominguez JT TEN | $100,000.00 | $20,000.00 | 5/17/2004 | 4.10 | 2.95 | 6,779.66 | 6,780 | 05/16/09 |
| | 3645 Madaca Lane | | | | | | | | |
| | Tampa FL  33618 | | | | | | | | |
| 3009 | John E Olivia & Lydia E Olivia JT TEN | $100,000.00 | $20,000.00 | 5/18/2004 | 4.06 | 2.92 | 6,849.32 | 6,850 | 05/17/09 |
| | 3617 S Beach Dr | | | | | | | | |
| | Tampa FL  33629 | | | | | | | | |
| 3010 | James M Puls TTEE | $100,000.00 | $20,000.00 | 4/30/2004 | 3.81 | 2.80 | 7,142.8571 | 7,143 | 04/29/09 |
| | The Puls Family Trust | | | | | | | | |
| | 3502 Henderson Blvd Ste 300 | | | | | | | | |
| | Tampa FL  33609 | | | | | | | | |

2502801.3

| Note Number | Registered Name and Address | Principal Amount of Note USD$ | Warrant Coverage (20% of investment amount) | Effective Date of Investment | Warrant Strike Price CDN$ | Warrant Strike Price USD$ | Warrants Issuable (1 warrant = 1 share) | Total Warrants (rounded up to nearest whole number) | Note Maturity and Warrant Expiry Date |
|---|---|---|---|---|---|---|---|---|---|
| 3012 | Paul T Hackspiel<br>7250 Old Redmond Rd #B105<br>Redmond WA  98052 | $100,000.00 | $20,000.00 | 6/25/2004 | 3.90 | 2.86 | 6,993.01 | 6,994 | 06/24/09 |
| 3014 | Clifford A. Cantrell Revocable Trust dtd 6/19/1998<br>6794 S Yates Court<br>Littleton CO  80128 | $200,000.00 | $40,000.00 | 7/12/2004 | 3.75 | 2.84 | 14,084.51 | 14,085 | 07/11/09 |
| 3015 | Carol A. Chaffin Revocable Trust<br>P.O. Box 35<br>Molina, CO  81646 | $100,000.00 | $20,000.00 | 9/14/2004 | 3.64 | 2.82 | 7,092.20 | 7,093 | 09/13/09 |
| | | $3,250,000.00 | $650,000.00 | | | | | 232,521 | |

25028013

SCHEDULE 3.5
LITIGATION; CONTINGENCIES

Claims of Navasota Resources, LP to purchase 33.33% of the Company's or First Source Gas L.P.'s interest in certain oil and gas leases located in Leon and Robertson Counties, Texas pursuant to a Preferential Right to Purchase provision contained in an Operating Agreement dated July 7, 2000 between First Source Texas, Inc., predecessor to First Source Gas L.P. and Navasota Resources, Inc., predecessor to Navasota Resources, L.P. and others, all as set forth in that certain petition for breach of contract and seeking declaratory judgment filed as Cause No. 0-05-451 Navasota Resources, L.P., Plaintiff vs. First Source Texas, Inc., First Source Gas L.P., and Gastar Exploration, Ltd. in the District Court of Leon County, Texas 12th Judicial District on October 31, 2005.

Western Gas Resources, Lance Oil and Gas Company, Inc. and Williams Production RMT Company filed a lawsuit on May 3, 2005 against the Company and others over a dispute that has arisen concerning a June 2002 Lease Exchange and Purchase Agreement between certain of the parties. The issue involves a certain gas gathering agreement and its applicability to some of the properties exchanges under the June 2002 Agreement. A formal response to the Complaint was filed in June 2005.

2528369.1

SCHEDULE 3.6

**Direct Subsidiaries of Gastar Exploration Ltd.:**

1.   New Energy West Corporation, an Alberta, Canada corporation

   **Direct Subsidiaries of New Energy West Corporation:**

   A.   616694 Alberta Ltd., an Alberta, Canada corporation

   B.   Monterey Resources Inc., an Alberta, Canada corporation

   C.   New Energy West (U.S.A.) Corporation, a California corporation

2.   1075191 Ontario Ltd., an Ontario, Canada corporation

   **Direct Subsidiaries of 1075191 Ontario Ltd.:**

   A.   First Sourcenergy Wyoming, Inc., a Michigan corporation

      **Direct Subsidiaries of First Sourcenergy Wyoming, Inc.:**

      i.     First Sourcenergy Group, Inc., a Michigan corporation

      ii.    First Appalachian Development, Inc., a Michigan corporation

      iii.   First Source Development, Inc., a Michigan corporation

      iv.    Oil and Gas Services, Inc., a Delaware corporation

      v.     First Sourcenergy Kansas Inc., a Delaware corporation

      vi.    Squaw Creek, Inc., a Delaware corporation

      vii.   First Sourcenergy Victoria, Inc., a Michigan corporation

      viii.  First Texas Development, Inc., a Michigan corporation

         **Direct Subsidiaries of First Texas Development, Inc.:**

         a.   Bossier Basin, LLC, a Delaware limited liability company (100% of membership interests)

         b.   First Source Gas, LP, a Delaware limited partnership (99.5% of partnership interests as limited partner)

            **Direct Subsidiaries of Bossier Basin, LLC:**

            1.   First Source Gas, LP, a Delaware limited partnership (0.5% of partnership interests as general partner)

2484865.1

## SCHEDULE 3.7
## LIENS

A.    Financing Statement #2004-23695331, filed November 29, 2004, with Pinnacle Gas Resources, Inc., as Secured Party, and First Sourcenergy Wyoming, Inc., as Debtor, filed in connection with the liens granted by Debtor pursuant to the Joint Operating Agreement dated June 23, 2003 between Secured Party and Debtor.

B.    Memorandum of Operating Agreement and Financing Statement, dated January 12, 2005, filed in Leon and Robertson Counties, Texas relating to that certain Operating Agreement by and between First Source Texas, Inc., as Operator, and Presco, Inc. as Non-Operator, covering, among other things, the development and production of crude oil, natural gas and associated substances from the lands and leases in the Clear Creek Prospect situated in Leon and Robertson Counties, Texas (lands subject to the agreement are any lands located in Leon and Robertson Counties, Texas in which any of the leasehold interest therein becomes jointly owned by the parties under the terms and conditions of that certain Farm-Out and Participation Agreement, dated as of August 26, 2003, by and among First Source Texas, Inc. and Presco, Inc.), which lands and leases are subject to the Geostar transaction.

C.    Claims of Navasota Resources, LP to purchase 33.33% of the Company's or First Source Gas L.P.'s interest in certain oil and gas leases located in Leon and Robertson Counties, Texas pursuant to a Preferential Right to Purchase provision contained in an Operating Agreement dated July 7, 2000 between First Source Texas, Inc., predecessor to First Source Gas L.P. and Navasota Resources, Inc., predecessor to Navasota Resources, L.P. and others, all as set forth in that certain petition for breach of contract and seeking declaratory judgment filed as Cause No. 0-05-451 Navasota Resources, L.P., Plaintiff vs. First Source Texas, Inc., First Source Gas L.P., and Gastar Exploration, Ltd. in the District Court of Leon County, Texas 12th Judicial District on October 31, 2005.

D.    Financing Statements and Mortgages Filed in Conjunction with the Securities Purchase Agreement dated June 16, 2005 between the Company, HFTP Investment L.L.C., Gaia Offshore Master Fund, Ltd., Leonardo, L.P., Wayland Recovery Fund, LLC, Wayzata Recovery Fund, LLC, Cyrus Opportunities Fund, L.P., and Cyrus Opportunities Fund II, L.P.

Mortgage, Deed of Trust, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement dated as of June 17, 2005 from First Source Gas, LP to Walter H. Walne, III, as Trustee for the benefit of Promethean Asset Management L.L.C., filed as follows:

| | | |
|---|---|---|
| Leon County, Texas | Volume 1213, Page 579 | 06/21/05 |
| Robertson County, Texas | Volume 906, Page 307 | 06/20/05 |

2484764.4

UCC Financing Statement with respect to above with First Source Gas, LP as debtor and filed as follows:

| | | |
|---|---|---|
| Secretary of State of Texas | 05-0019145914 | 06/20/05 |

Mortgage, Deed of Trust, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement dated as of October 12, 2005 from First Source Gas, LP to Walter H. Walne, III, as Trustee for the benefit of Promethean Asset Management L.L.C., filed as follows:

| | | |
|---|---|---|
| Leon County, Texas | Volume 1228, Page 244 | 10/14/05 |
| Robertson County, Texas | Volume 921, Page 720 | 10/13/05 |

Mortgage, Deed of Trust, Assignment of Production, Security Agreement, Fixture Filing and Financing Statement dated as of June 17, 2005 from First Appalachian Development, Inc. to James A. Harris, as Trustee for the benefit of Promethean Asset Management L.L.C., filed as follows:

| | | |
|---|---|---|
| Marion County, WV | Instrument #200500008610, Book 836, Page 1046 | 06/24/05 |
| Wetzel County, WV | Instrument #60528, Book 315, Page 16 | 06/21/05 |
| Tyler County, WV | Instrument #23569, Book 157, Page 480 | 06/21/05 |

UCC Financing Statement with First Appalachian Development, Inc. as debtor, covering Marion County, West Virginia leases and filed as follows:

| | | |
|---|---|---|
| Secretary of State of Virginia | 200500718356 | 06/27/05 |

2484764.4

UCC Financing Statement with First Appalachian Development, Inc. as debtor, covering Tyler County, West Virginia leases and filed as follows:

| | | |
|---|---|---|
| Secretary of State of Virginia | 200500718343 | 06/27/05 |

UCC Financing Statement with First Appalachian Development, Inc. as debtor, covering Wetzel County, West Virginia leases and filed as follows:

| | | |
|---|---|---|
| Secretary of State of Virginia | 200500718368 | 06/27/05 |

Other Financing Statements filed in conjunction with June 16, 2005 Securities Purchase Agreement:

| | | | |
|---|---|---|---|
| Squaw Creek, Inc. | Delaware Secretary of State | 51869362 | 06/17/05 |
| Oil and Gas Services, Inc. | Delaware Secretary of State | 51869321 | 06/17/05 |
| First Source Gas, LP | Delaware Secretary of State | 51869297 | 06/17/05 |
| First SourceEnergy Kansas Inc. | Delaware Secretary of State | 51869180 | 06/17/05 |
| Bossier Basin, LLC | Delaware Secretary of State | 51869149 | 06/17/05 |
| New Energy West (U.S.A.) Corporation | California Secretary of State | 05-7031231254 | 06/17/05 |
| First Appalachian Development, Inc. | Michigan Secretary of State | 2005110993-8 | 06/20/05 |
| First Source Development, Inc. | Michigan Secretary of State | 2005110994-0 | 06/20/05 |
| First SourceEnergy Group, Inc. | Michigan Secretary of State | 2005110995-2 | 06/20/05 |
| First SourceEnergy Victoria, Inc. | Michigan Secretary of State | 2005110996-4 | 06/20/05 |
| First SourceEnergy Wyoming, Inc. | Michigan Secretary of State | 2005110997-6 | 06/20/05 |
| First Texas Development, Inc. | Michigan Secretary of State | 2005110998-8 | 06/20/05 |
| 616694 Alberta Ltd. | District of Columbia | 2085084175 | 06/20/05 |
| 1075191 Ontario Ltd. | District of Columbia | 2005884176 | 06/20/05 |
| Gastar Exploration Ltd. | District of Columbia | 2005084177 | 06/20/05 |
| Monterey Resources Inc. | District of Columbia | 2005084178 | 06/20/05 |

2484764.4

| New Energy West Corporation | District of Columbia | 2005084179 | 06/20/05 |

| | | |
|---|---|---|
| Powder River County, MT | Document #130178, Book 75, Page 349 | 09/06/05 |
| Campbell County, WY | Document #856621, Book 2089, Page 1 | 09/08/05 |
| Sheridan County, WY | Document #519074, Book 611, Page 1 | 09/06/05 |

2484764.4

SCHEDULE 3.8

<u>Consents</u>

None

2484870.1

## SCHEDULE 3.9

### Proprietary Rights Exceptions

None

SCHEDULE 3.10

**Changes to Financial Statements**

None

## SCHEDULE 3.11

### Compliance with Laws Exceptions

None

## SCHEDULE 3.13

### ERISA – Employment Benefit Plans

Gastar Exploration Ltd. has a Stock Option Plan (the "Plan") in place that was approved by the Board of Directors and shareholders of Gastar.  The shares to be offered under the Plan shall consist of shares of the Corporation's authorized but unissued common shares.  The aggregate number of shares issuable upon the exercise of all options granted under the plan shall not exceed 25,000,00 common shares.  All options granted pursuant to the Plan are subject to the rules and policies of any stock exchange or exchanges on which the common shares of the Corporation are then listed and any other regulatory body having jurisdiction over the common shares of the Corporation. Directors, officers, employees and consultants of the Corporation or its subsidiaries are eligible for selection to participate in the Plan.  The Board of Directors shall determine to whom options are granted, the terms and provisions of the respective option agreements, vesting provisions and the number of shares to be subject to each option.

2484959.2

SCHEDULE 3.14

## Environmental Matters and Permits

None

SCHEDULE 3.17

**Taxes**

None

2484908.1

## SCHEDULE 3.18

### Absence of Certain Developments

None

## SCHEDULE 3.19

### BROKERAGE FEES

Gastar Exploration Ltd. has engaged Pritchard Capital Partners, L.L.C. to act as introducing broker in connection with the transaction contemplated by this Agreement and anticipates a fee will be paid to Pritchard of an amount not to exceed $1,500,000.

## SCHEDULE 3.23

## Affiliate Transactions

(a) In 2001, the Company entered into a Participation and Operating Agreement ("POA") with Geostar. Pursuant to the terms of the agreement, the Company has the option to participate as a working interest partner in properties in which Geostar and its subsidiaries have interests in on an "at cost" basis, subject to Gastar's full due diligence review, prior to its participation election. Upon agreeing to participate, the Company is responsible for its proportionate share of actual costs expended by Geostar and its subsidiaries to various arms length parties on an "at cost" basis. The balance of $600,811 at December 31, 2004 and $38,930 at December 31, 2003, represents amounts owed to Geostar and its subsidiaries for oil and gas property development. The 2003 balance was settled in 2004 via a cash payment. Of the total revenue receivable on the first-quarter 2005 balance sheet, $3,040,552 represents amounts that will be owed from Geostar once it receives the revenue from the third party gas purchaser. These amounts were settled subsequent to the end of the first quarter 2005.    At June 30, 2005, there is a balance of $858,000 receivable from Geostar related to the revenue earned from the properties net of capitalized expenditures incurred during the period and net of the estimated post closing adjustments. This amount, along with the final post-closing purchase price adjustments, will be settled as provided for in the Purchase and Sale Agreements between Geostar and the Company.

(b) On June 1, 2000, the Company entered into an agreement with Geostar, a significant shareholder, to settle accounts payable related to the development of oil and gas properties with the issuance of a floating convertible debenture for up to CDN $25 million. Under the agreement, Geostar would continue to provide funds for development and operations by allowing the Company to draw down on the debenture. Advances under the debenture would be subject to Geostar's availability of funds and the approval of the requested advances by Geostar's board of directors. The debenture was payable in cash or could be converted into shares at prevailing market prices at the option of the Company. Effective January 1, 2005, pursuant to the Joint Operating Agreement (defined in (e) below) with Geostar, the Company cancelled this convertible debenture agreement.

(c) In 2004, pursuant to the terms of the POA, Geostar also billed the Company $27,000 (2003 - $369,371) for administrative overhead based on current independent, third-party, industry billing rates for similar services within the same project area.

(d) In 2004, First Sourcenergy Wyoming, Inc. ("FSW") recorded $1,326,916 (2003 - $Nil) in general and administrative costs for administrative and technical support provided by Geostar to the Company. Commencing April 1, 2004, FSW and Geostar agreed to replace the administrative fee with a cost sharing arrangement. As a result, Geostar will charge FSW a proportionate amount of direct salary and shared premises rent expense for Geostar employees providing administrative and technical support services to Gastar based on actual costs incurred. This cost sharing arrangement is expected to continue as long as Geostar is the operator of the jointly-owned properties. This arrangement resulted in a charge of approximately $146,000 per month for the second and third quarter of 2004 and $150,000 per month for the fourth quarter of 2004. The consolidated statements also include approximately $114,500 (2003 - $33,456) in seismic reprocessing fees to a subsidiary of Geostar, based on current independent, third-party industry billing rates. The seismic reprocessing fees were capitalized to oil and gas properties.

(e) Effective January 1, 2005, the Company, FSW, and Geostar entered into a Joint Operating Agreement ("JOA") covering an Area of Mutual Interest ("AMI") in the East Texas Basin, with Gastar as a Non-Operator and Geostar as Operator.    Under the terms of the JOA, Geostar will receive overhead reimbursement equal to 12.5% of development costs for the first 10 wells drilling after January 1, 2005, 10% of the development costs for the 11th through 20th wells and 8.5% of the developments costs for subsequent wells. As a result, Geostar will no longer charge Gastar a proportionate amount of direct salary and shared premises rent expense for Geostar employees providing administrative and technical support services to Gastar.

2484953.1

(f) Letter of Intent, dated April 15, 2005, regarding the purchase of the Powder River Basin and East Texas assets of Geostar by the Company effective January 1, 2005. Under separate documentation the Company will enter into an agreement to purchase an option for certain coal mining rights in Victoria, Australia.

(g) Purchase and Sale Agreement and Assignment of Interests – Texas Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among Geostar, First Source Texas, Inc., First Source Bossier, LLC and First Texas Gas LP ("Texas Seller") and the Company, First Texas Development, Inc., Bossier Basin, LLC and First Source Gas, LP ("Texas Buyer").

(h) Purchase and Sale Agreement and Assignment of Interests – Texas Non-Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among Texas Seller and Texas Buyer.

(i) Purchase and Sale Agreement and Assignment of Interests – Wyoming and Montana Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among Geostar, First Source Wyoming, Inc. and Squaw Creek Development, Inc. ("Wyoming/Montana Seller") and the Company, First Sourcenergy Wyoming, Inc. and Squaw Creek, Inc. ("Wyoming/Montana Buyer").

(j) Purchase and Sale Agreement and Assignment of Interests – Wyoming and Montana Non-Producing Properties, executed as of the Initial Closing Date and effective as of January 1, 2005, by and among the Wyoming/Montana Seller and the Wyoming/Montana Buyer.

(k) Authority for Expenditures ("AFEs") for joint drilling operations in East Texas for the F-K #1, Cheney #1, LOR #1, Greer #1, F-K #2 and Donelson #1 wells.

(l) AFEs for joint drilling operations in Victoria, Australia for the Burong #2 and #3 wells.

(m) Registration Rights Agreement between Gastar Exploration, Ltd. and Geostar Corporation dated June ___, 2005.

(n) August 11, 2005 agreement whereby the Geostar $32.0 million unsecured subordinated note was cancelled and the Company agreed issued 6,373,694 common shares at CDN$3.25 per share and issued a new unsecured note for $15.0 million for the remaining balance to Geostar. New note bears interest at LIBOR plus 4.5% and amortizes at $1.5 million per month commencing February 15, 2006.

2484953.1