# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CHESAPEAKE EXPLORATION, L.L.C., and CHESAPEAKE ENERGY CORPORATION,** | § § § § | |
| **Plaintiffs,** | § § | **CIVIL NO. 4:12-cv-2922** |
| **vs.** | § § | |
| **GASTAR EXPLORATION, LTD, GASTAR EXPLORATION TEXAS, LP, and GASTAR EXPLORATION TEXAS, LLC,** | § § § § § § | |
| **Defendants.** | § | |

---

## GASTAR'S MOTION TO DISMISS PLAINTIFFS' CLAIMS UNDER FED. R. CIV. P. 12(b)(6)

---

James D. Thompson III, Attorney-in-Charge
Guy S. Lipe
Holly O. Rumbaugh
VINSON & ELKINS, LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Telephone:   (713) 758-4502
Facsimile:   (713) 615-5765
Jthompson@velaw.com
*Attorneys for Defendants,*
*Gastar Exploration, Ltd., Gastar Exploration*
*Texas, LP, and Gastar Exploration Texas, LL*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

THE FACTS AS ALLEGED IN THE COMPLAINT ...............................................3

ARGUMENT ........................................................................................9

I.     Standard For Dismissal Under 12(B)(6)........................................................9

II.    Chesapeake's Claim for Rescission and Restitution Based on "Mutual Mistake" Should Be Dismissed. .................................................................11

    A.    The Facts Pleaded by the Chesapeake Plaintiffs and the Agreements of the Parties Demonstrate That There Was No Mistake At All. ...................................................................................12

    B.    The Alleged Mistake Regarding Navasota's Legal Right to Acquire the Leasehold Interests Properties is a Mistake of Law That Cannot Support a Claim for Rescission. ……………………………………14

    C.    Chesapeake's Complaint Fails to Show There was a Mistake Concerning the Parties' Antecedent Legal Rights …………………15

III.   The Claim for Rescission and Restitution Based on "Failure of Consideration" Should be Dismissed. ......................................................18

    A.    The Facts Pleaded by the Chesapeake Plaintiffs Demonstrate That There Was No Failure of Consideration. .....................................19

    B.    The Facts Pleaded by the Chesapeake Plaintiffs Demonstrate that the Alleged Failure of Consideration Was Not "Complete," as Required in an Action for Rescission....................................................20

IV.    The Unjust Enrichment Claim Should Be Dismissed. .................................21

    A.    The Allegations of the Complaint and the Terms of the Agreements Conclusively Negate the Unjust Enrichment Claim.......21

    B.    The Complaint Shows on its Face That the Unjust Enrichment Claim is Barred by the Statute of Limitations....................................24

CONCLUSION ...................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................9

*Barker v. Roelke,*
  105 S.W.3d 75 (Tex. App.—Eastland 2003, pet. denied) ...................................11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...............................................................................9, 10

*Bennett v. Schmidt,*
  153 F.3d 516 (7th Cir. 1998)......................................................................10

*Burlington Northern Railroad Co. v. Southwestern Electric Power Co.,*
  925 S.W.2d 92 (Tex. App.—Texarkana ),
  *aff'd,* 966 S.W.2d 467 (Tex. 1998) ......................................................... 22, 23

*Cmty. Mut. Ins. Co. v. Owen,*
  804 S.W.2d 602 (Tex. App.—Houston [1st Dist.] 1991, writ denied)......... 14, 16

*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000).................................................................4, 11

*Complete Pharmacy Res. Ltd. v. Feltman,*
  No. Civ. A. H-04-3477, 2005 WL 1949540 (S.D. Tex. Aug. 12, 2005) ............10

*Elledge v. Friberg-Cooper Water Supply,*
  240 SW.3d 869 (Tex. 2007)........................................................................25

*Gensco, Inc. v. Transformaciones Metalurgicias Especiales,*
  666 S.W.2d 549 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd)............20

*Graham v. Billings,*
  51 S.W. 645 (Tex. Civ. App. 1899) ................................................................14

*Green v. Morris,*
  43 S.W.3d 604 (Tex. App.—Waco 2001, no pet.) ...........................................11

*Harris v. Sanderson,*
  178 S.W.2d 315 (Tex. App.—Eastland 1944, writ ref'd w.o.m.)......................14

*Herrmann v. Lindsey,*
  136 S.W.3d 286 (Tex. App.—San Antonio 2004, no pet.)........................ 16, 17

*Jones v. Alcoa, Inc.,*
  339 F.3d 359 (5th Cir. 2003)................................................................10

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,*
  677 F.2d 1045 (5th Cir. 1982) *cert. denied,*
  459 U.S. 1105 (1983) ........................................................................11

*Martinez v. Donna Indep. Sch. Dist.,*
  No.  M-03-377, 2007 WL 2446814 (S.D. Tex. Aug. 23, 2007) ........................10

*Navasota Res., L.P. v. First Source Tex., Inc.,*
  249 S.W.3d 526 (Tex. App.—Waco 2008, pet. denied)................................4, 15

*Oak Hills Props. v. Saga Rest., Inc.,*
  940 S.W.2d 243 (Tex. App.—San Antonio 1997, no writ) ................................14

*Ussery v. Hollebeke*, 391 S.W.2d 497
  (Tex. App.—El Paso 1965, writ ref'd n.r.e.) ....................................................14

*Walden v. Affiliated Computer Servs., Inc.,*
  97 S.W.3d 303 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)...............20

*Westland Oil Dev. Corp. v. Gulf Oil Corp.,*
  637 S.W.2d 903 (Tex. 1982).............................................................................3

**Statutes**

Tex. Civ. Prac. & Rem. Code § 16.003 ...................................................................24

**Rules**

FED. R. CIV. P. 12(b)(6)..........................................................................1, 9, 10, 25

FED. R. CIV. P. 8(a).......................................................................................................9

Defendants Gastar Exploration, Ltd. ("Gastar Ltd."), Gastar Exploration Texas, LP ("Gastar LP"), and Gastar Exploration Texas, LLC ("Gastar LLC") (collectively, "the Gastar Defendants") file this Motion to Dismiss the Complaint filed by Chesapeake Exploration, L.L.C. ("Chesapeake Exploration") and Chesapeake Energy Corporation ("Chesapeake Energy") (collectively, "the Chesapeake Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims upon which relief may be granted.

## INTRODUCTION

The Chesapeake Plaintiffs seek to rescind multiple agreements that involved (1) the purchase by Chesapeake Exploration of part of Gastar LP's interests in certain oil and gas leases, (2) the purchase by Chesapeake Energy of stock in Gastar Ltd., and (3) creation of a geographic area of mutual interest ("AMI") that would entitle Chesapeake Exploration to acquire interests in oil and gas leases that Gastar LP subsequently acquired.  The Chesapeake Plaintiffs contend that this Court should undo those agreements based on an alleged "mutual mistake of fact" and a "failure of consideration."  The allegations of mutual mistake and failure of consideration are based on the Texas Court of Appeals decision upholding the validity of the exercise by a third party, Navasota Resources, LP ("Navasota"), of a preferential right to purchase the interests in the oil and gas leases that Gastar LP sold to Chesapeake Exploration, and requiring that Chesapeake Exploration

convey those interests in the leases to Navasota.  The Chesapeake Plaintiffs also assert that the mandated conveyance of the properties by Chesapeake Exploration to Navasota resulted in "benefits" to the Gastar Defendants that give rise to an unjust enrichment claim.

The allegations of the Complaint, and the terms of the agreements that the Chesapeake Plaintiffs now seek to rescind, demonstrate that there was no "mistake" regarding the facts at the time of execution of the agreements, that there was no failure of consideration, and that there was no unjust enrichment.  As the Chesapeake Plaintiffs concede in their Complaint, the Chesapeake Plaintiffs and the Gastar Defendants were fully aware, at the time of execution of the agreements, of the claim of Navasota to the interests in the oil and gas leases and were likewise fully aware of the lawsuit that Navasota had filed to establish its right to acquire the interests.  In fact, in the agreements that the Chesapeake Plaintiffs now seek to rescind, the parties (1) acknowledged the existence of Navasota's claim, (2) agreed that Chesapeake Exploration would acquire title to the interests in the oil and gas leases subject to and burdened by Navasota's claim, and (3) agreed that in the event Navasota prevailed, Chesapeake Exploration would convey the interests in the oil and gas leases to Navasota.  In short, the parties to the agreements knew all of the facts relating to Navasota's claim, expressly agreed that Chesapeake would acquire title to the properties subject to and burdened by that claim, and expressly

2

addressed in their agreements what would occur if Navasota won its lawsuit. The "mandated conveyance" of the properties by Chesapeake to Navasota following the court of appeals' decision in Navasota's favor is precisely what the agreements called for and what the parties bargained for.

By this lawsuit, the Chesapeake Defendants seek to avoid that bargain. As shown below, that effort fails as a matter of law. Because the Complaint fails to state claims on which relief may be granted, this action should be dismissed.

## THE FACTS AS ALLEGED IN THE COMPLAINT

On September 16, 2005, a letter of intent was signed for a transaction involving three aspects:

(1)     sale of 19.9% (27,151,641 shares) of Gastar Ltd.'s common stock to Chesapeake Energy for $76,031,654;

(2)     purchase by Chesapeake Exploration of 33.33% of Gastar LP's working interests in the Hilltop Prospect, an area located in the East Texas counties of Leon and Robertson for $5,626,811; and

(3)     entry by Chesapeake Exploration and Gastar LP into an area of mutual interest ("AMI") comprising a thirteen county area in East Texas.[1]

See Complaint, at ¶¶ 9,12, and 30.

Soon after, Navasota notified Gastar of its election to exercise a right of first refusal to acquire the Hilltop Prospect properties under a July 2000 Joint Operating Agreement ("JOA") covering the properties. Complaint, at ¶ 15. Immediately

---

[1] An AMI is a geographic area in which parties "agree to share certain additional leases acquired by any of them in the future." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 905 (Tex. 1982).

thereafter, a dispute arose between Navasota, as the preferential right holder, and the Chesapeake Plaintiffs and the Gastar Defendants, as the parties to the proposed transaction, regarding the validity under Texas law of Navasota's exercise of the preferential right to purchase.  *See* Complaint, at ¶ 15.  Navasota then filed suit seeking, among other things, a judicial declaration resolving the parties' dispute as to the correct interpretation of preferential rights under Texas law.[2]  *See* Complaint, at ¶ 19; *see also* Purchase and Sale and Exploration and Development Agreement (Ex. 1), at § 4.5.[3]  With notice of Navasota's lawsuit (and a related *lis pendens*), the Chesapeake Plaintiffs and the Gastar Defendants proceeded with the transaction. Complaint, at ¶ 15.

Specifically, on November 4, 2005:  (1) Chesapeake Exploration and Gastar LP[4] executed a Purchase and Sale and Exploration and Development Agreement,

---

[2] A description of the procedural history of this dispute and the positions taken by both sides can be found in *Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526 (Tex. App.—Waco 2008, pet. denied).

[3] All of the agreements are referenced in but not attached to the Complaint.  In considering a motion to dismiss under Rule 12(b)(6), this Court may consider the provisions of any agreement referenced in the Complaint, notwithstanding the fact that it is not attached to the Complaint.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

[4] As the Chesapeake Plaintiffs point out in their Complaint at ¶ 4, Defendant Gastar LP was known as First Source Gas, L.P. (at the time of execution of the agreements).  In identifying the parties to the various agreements to which First Source Gas, L.P. was a party, the Gastar Defendants will refer to Gastar LP as the party rather than First Source Gas, L.P., for ease of reference.  Gastar LLC, formerly known as Bossier Basin, LLC (*see* Complaint, at ¶ 5), is the general partner of Gastar LP, and it signed the agreements on behalf of Gastar LP.  Gastar

(2) Chesapeake Energy and Gastar Ltd. executed a Common Share Purchase Agreement, (3) Chesapeake Exploration, Gastar LP, and Gastar Ltd.[5] executed an Exploration and Development Agreement, and (4) Chesapeake Energy and Gastar Ltd. executed a Registration Rights Agreement. *See* Complaint, at ¶ 13; Exs. 1 through 4, respectively hereto. Chesapeake Exploration and Gastar LP also executed a Joint Operating Agreement that same day that designated Gastar LP as the Operator. Complaint, at ¶17.

In the Complaint, the Chesapeake Plaintiffs concede, as they must, that at the time of execution of these agreements, they were "aware that a third party, [Navasota], had made a claim to a right of first refusal on the Hilltop Prospect interests." Complaint, at ¶ 15. The agreements confirm that fact. Section 4.5 of the Purchase and Sale and Exploration and Development Agreement states that "Chesapeake acknowledges the existence of and agrees to close and take title to First Source's Hilltop Leasehold subject to the following:

> Claims of Navasota Resources, LP to purchase 33.33% of the Company's or First Source Gas L.P.'s interest in certain oil and gas leases located in Leon and Robertson Counties, Texas pursuant to a Preferential Right to Purchase provision contained in an Operating Agreement dated July 7, 2000 between First Source Texas, Inc., predecessor to First Source Gas L.P. and Navasota Resources, Inc., predecessor to Navasota Resources, L.P. and others, all as set forth in

---

LLC had no role in the agreements other than in its capacity as general partner of Gastar LP.

[5] Gastar Ltd. signed this agreement even though it is not referenced as a party in the body of the agreement.

> that certain petition for breach of contract and seeking declaratory judgment filed as Cause No. 0-05-451 Navasota Resources, L.P., Plaintiff vs. First Source Texas, Inc., First Source Gas L.P., and Gastar Exploration, Ltd. in the District Court of Leon County, Texas 12th Judicial District on October 31, 2005."

Ex. 1, at § 4.5.   The agreement goes on to say in that same section that "Chesapeake understands and agrees that the title to the Hilltop Leasehold acreage is burdened by the foregoing." *Id*. The agreement also addresses what was to occur in the event Navasota prevailed in its lawsuit:

> Chesapeake further agrees that in the event that plaintiff, Navasota Resources, L.P. prevails in the aforesaid litigation that Chesapeake will upon receipt of the purchase price and/or other consideration from Navasota Resources L.P. paid pursuant to: (i) a final judgment not subject to appellate review or, (ii) a settlement in lieu thereof which has been jointly approved by Chesapeake and First Source, convey to Navasota Resources L.P. such leasehold interests along with any other rights and obligations transferred hereunder, and under inter-related transactions hereto, to the extent required by such judgment or settlement.

*Id*. (emphasis added).

In addition to the detailed treatment of Navasota's claim in the Purchase and Sale Agreement, the Common Share Purchase Agreement listed the Navasota litigation in the Schedule of Litigation in Schedule 3.5. Ex. 2, Schedule 3.5. It also excluded that litigation from Gastar Ltd's representation that there was no action, suit, or proceeding pending that questioned the validity of any action taken or to be taken pursuant to the agreements, including the Purchase and Sale Agreement. Ex. 2, at §§ 3.5 and 6.1.

Thus, the agreements that the Chesapeake Plaintiffs now seek to rescind show that (1) the Chesapeake Plaintiffs and the Gastar Defendants were fully aware of Navasota's claim to the properties at the time of execution of the agreements and the litigation that Navasota had filed against the Chesapeake Plaintiffs and the Gastar Defendants, (2) Chesapeake Exploration agreed to acquire and take title to the properties subject to and burdened by Navasota's claim to those properties, and (3) the parties agreed that Chesapeake Exploration would convey the properties to Navasota in the event Navasota prevailed in the litigation. Complaint, at ¶ 16; Ex. 1, at § 4.5; Ex. 2, at § 3.5 and Schedule 3.5.

Navasota pursued its lawsuit. Complaint, at ¶ 19. Navasota's claims were initially dismissed by the Leon County District Court (in ruling on the parties' cross-motions for summary judgment). *See id.* However, on January 9, 2008, the Texas Court of Appeals reversed the district court, holding that Navasota's exercise of its preferential rights under the JOA was valid and ordering Chesapeake Exploration to convey the leasehold interests to Navasota. *Id.* On January 9, 2009, the Texas Supreme Court denied the petition for review of that decision. *Id.* at 22. Upon issuance of the mandate by the court of appeals, Chesapeake Exploration conveyed the leasehold interests to Navasota and received from Navasota a payment of $5,009,932 for the conveyance of the properties and a payment of $20,465,841 as reimbursement of the costs of drilling certain wells. *Id.*

7

On August 28, 2009, the Chesapeake Plaintiffs filed a counter-claim against Navasota, seeking to recover the costs of drilling and completing certain wells attributable to the disputed interests during the time while the Chesapeake Plaintiffs held such interests. Ex. 5, at ¶¶ 11-15. In the same pleading, the Chesapeake Plaintiffs filed a cross-action against the Gastar Defendants in the Navasota lawsuit, seeking rescission of the entire November 2005 transaction based on alleged mutual mistake and failure of consideration. *Id*. at ¶¶ 22 and 23. The Chesapeake Plaintiffs later non-suited the cross-action without prejudice, subject to a Tolling Agreement entered into by the parties (Ex. 6), that tolled the statute of limitations for the claims asserted in the cross-action until six months after final judgment in the Navasota lawsuit. *See* Ex. 6, at ¶¶ 1, 2, and 3; Complaint, at n.1.

Following final resolution of all claims in the Navasota litigation by settlement (including settlement of the Chesapeake Plaintiffs' claims against Navasota for reimbursement of drilling and completion costs), the Chesapeake Plaintiffs filed this lawsuit on October 1, 2012, again seeking rescission of the agreements based on alleged mutual mistake and failure of consideration. The Chesapeake Plaintiffs also asserted, for the first time, a claim for unjust enrichment based on the court of appeals' decision mandating conveyance of the interests in the oil and gas leases by Chesapeake Exploration to Navasota, notwithstanding the

parties' agreements that expressly addressed what would occur in the event Navasota won.

For the reasons set out below, even if all of the Chesapeake Plaintiffs' allegations are accepted as true, the Complaint fails to state claims on which relief may be granted.

## ARGUMENT

### I.    Standard For Dismissal Under 12(B)(6).

A court may dismiss a complaint that fails to state a valid claim for relief. FED. R. CIV. P. 12(b)(6).  A claim for relief at the pleading stage requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).  The Supreme Court has determined that Rule 12(b)(6) and Rule 8(a) should be read together, and to avoid dismissal, a complaint must allege facts to establish that a claim is "plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  To satisfy this plausibility standard, the complaint must plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Moreover, as explained by the Supreme Court, "[w]hen the

allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly,* 550 U.S. at 558 (citations omitted).

In pleading facts to support a claim, it is possible for plaintiffs to "plead themselves out of court." *Martinez v. Donna Indep. Sch. Dist.*, No. M-03-377, 2007 WL 2446814, *3 (S.D. Tex. Aug. 23, 2007) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (internal quotations omitted)). Plaintiffs plead themselves out of court when they allege facts that directly contradict their entitlement to relief. *Martinez*, 2007 WL 2446814, at *3; *see also Complete Pharmacy Res. Ltd. v. Feltman*, No. Civ. A. H-04-3477, 2005 WL 1949540, *3 (S.D. Tex. Aug. 12, 2005) ("[I]f a plaintiff chooses to plead particulars, and they show he has no claim, then he is out of luck – he has pleaded himself out of court.") (internal quotations omitted).

Likewise, plaintiffs "plead themselves out of court" when the complaint alleges facts that irrefutably establish the defendant's affirmative defense. For example, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003) (upholding district court's 12(b)(6) dismissal of

complaint when pleaded facts demonstrated the statute of limitations had run); *see also, e.g., Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050-51 (5th Cir. 1982) *cert. denied,* 459 U.S. 1105 (1983) (same).

In determining whether a claim is "plausible on its face," a court is not strictly limited to the four-corners of the complaint; a court may examine documents a defendant attaches to its motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.*

## II.     Chesapeake's Claim for Rescission and Restitution Based on "Mutual Mistake" Should Be Dismissed.

The necessary elements for a claim of rescission of an agreement based on mutual mistake are "(1) a mistake of fact, (2) held mutually by the parties, (3) which materially affects the agreed-upon exchange." *Green v. Morris*, 43 S.W.3d 604, 606 (Tex. App.—Waco 2001, no pet.). Mutual mistake "must not routinely be available to avoid the results of an unhappy bargain." *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.—Eastland 2003, pet. denied). Rather, "[p]arties should be able to rely on the finality of freely bargained agreements." *Id.*

Moreover, the Texas Supreme Court has held that an "error in predicting a future fact known to be uncertain is not the kind of mistake which will relieve a

party from a contract." *City of Austin v. Cotten*, 509 S.W.2d 554, 557 (Tex. 1974). A claim of mutual mistake also fails as a matter of law where the contract between the parties allocates the risk of the uncertain future event to a particular party. *See, e.g., Cherry v. McCall*, 138 S.W.3d 35, 40 (Tex. App.—San Antonio, 2004, pet. denied) ("a party bears the risk of mistake when the risk is allocated to him by agreement").

Applying these principles, the allegations of the Complaint and the provisions of the agreements themselves demonstrate on their face that the Chesapeake Plaintiffs cannot establish a right to rescission based on mutual mistake of fact.

### A.   The Facts Pleaded by the Chesapeake Plaintiffs and the Agreements of the Parties Demonstrate That There Was No Mistake At All.

Chesapeake's Complaint seeks to rescind the agreements with Gastar because the parties were allegedly "mutually mistaken" as to the validity of Navasota's exercise of its preferential right to purchase the Hilltop Prospect properties. *See* Complaint, at ¶ 27.  However, as shown by the agreements, which form the basis of Chesapeake's Complaint,[6] and as admitted by Chesapeake in the Complaint, there was no mutual mistake; both parties were aware of Navasota's

---

[6] *See* Complaint, at ¶¶ 13 and 32 (identifying all five of the agreements between Gastar and Chesapeake, effective November 4, 2005, that Chesapeake now seeks to rescind—four agreements listed in paragraph 13, and rescission of the JOA referenced in ¶ 32 and the Prayer at ¶ 41A).

claim to the leasehold interests at the time the Chesapeake Plaintiffs and the Gastar Defendants entered into the November 2005 agreements. *See* Ex. 1, at § 4.5; Ex. 2, at § 3.5 and Schedule 3.5; Complaint, at ¶ 15 ("When the Related Agreements were executed, Chesapeake, Gastar and First Source were aware that a third party, Navasota . . . had made a claim to a right of first refusal on the Hilltop Prospect interests that Gastar/First Source was selling to Chesapeake."). Explicitly recognizing the possibility that Navasota might prevail on its claim to the properties, Chesapeake Exploration confirmed when it executed the Purchase and Sale Agreement that its acquisition of the properties was "subject to" Navasota's claim, that it "understands and agrees that the title to the Hilltop Leasehold acreage is burdened by" Navasota's claims in its lawsuit, and that should Navasota prevail in its lawsuit, "Chesapeake will . . . convey to Navasota Resources L.P. such [Hilltop] leasehold interests . . . to the extent required by [a] judgment or settlement." Ex. 1, at § 4.5; Complaint, at ¶ 16.

These facts, established by the allegations in the Complaint and by the face of the agreements referenced in the Complaint, demonstrate that there was no "mutual mistake of fact." To the contrary, these facts demonstrate the opposite – the parties were fully aware of all facts and addressed what would happen in the event Navasota prevailed. There was no mistake, mutual or otherwise.

**B.     The Alleged Mistake Regarding Navasota's Legal Right to Acquire the Leasehold Interests Properties is a Mistake of Law That Cannot Support a Claim for Rescission.**

As discussed, there was no mutual mistake by the parties, but if there was any mistake, it could only have been a mistake of law (which provides no basis for rescission).  Texas courts have long held that "ignorance of law, not mixed with accident or mistake of fact, is no ground for relief, either in law or equity." *Graham v. Billings*, 51 S.W. 645, 646 (Tex. Civ. App. 1899); *Cmty. Mut. Ins. Co. v. Owen*, 804 S.W.2d 602, 604-05 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("The general rule is that the courts will not relieve a party of the effects of a mistake of law…. A mistake of law means a mistake as to the legal consequences of an assumed state of facts.").  It has long been "the general rule that a mutual mistake of law will not furnish grounds for avoiding a contract."  *Harris v. Sanderson*, 178 S.W.2d 315, 320 (Tex. App.—Eastland 1944, writ ref'd w.o.m.); *Oak Hills Props. v. Saga Rest., Inc.*, 940 S.W.2d 243, 246 (Tex. App.—San Antonio 1997, no writ) ("mistake of law does not relieve a party to a contract from being bound by its terms"); *Ussery v. Hollebeke*, 391 S.W.2d 497, 501-02 (Tex. App.—El Paso 1965, writ ref'd n.r.e.) (rescission of conveyance, based on mutual mistake after learning reservation of mineral rights was invalid due to violation of a law, was precluded because it was a mistake of law).

The Chesapeake Plaintiffs and the Gastar Defendants closed their transaction

in November 2005 fully aware of Navasota's pending claim and in agreement that Chesapeake Exploration would acquire title to the properties subject to and burdened by Navasota's claim and would convey the properties to Navasota in the event Navasota won the litigation.  The only uncertainly was how the state court would rule on Navasota's lawsuit.  The state district court resolved on cross-motions for summary judgment the question of law regarding the validity of Navasota's exercise of its preferential right to purchase against Navasota on summary judgment; the court of appeals reversed and rendered, resolving that question of law in Navasota's favor.  *See Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526 (Tex. App.—Waco 2008, pet. denied).  Thus, any alleged "mistake," assuming one even occurred, related to a question of law – whether Navasota's exercise of its preferential right to purchase was valid under Texas law. As a matter of law, the alleged mistaken interpretation of Texas law relating to the validity of Navasota's exercise of its preferential right to purchase under the JOA is not a mistake of fact and cannot support a claim for rescission.

### C.    Chesapeake's Complaint Fails to Show There was a Mistake Concerning the Parties' Antecedent Legal Rights

The Chesapeake Plaintiffs attempt to invoke an exception to the general rule that mistakes of law cannot constitute a mistake of fact supporting a claim for rescission.  *See* Complaint, at ¶ 27.  As shown below, that exception is not applicable under the facts alleged in the Complaint.

Under Texas law, there is a limited exception to the general rule that mistakes of law do not permit rescission. This exception applies when "a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights." *Herrmann v. Lindsey*, 136 S.W.3d 286, 292 (Tex. App.—San Antonio 2004, no pet.). "[T]he deciding factor in Texas cases, in distinguishing between antecedent legal rights and the general law, appears to be whether the party seeking rescission complains of mistaken legal effect of the document he seeks to rescind, or of his belief as to the state of the law which caused him to execute the agreement." *Id*. (emphasis added). Where the latter forms the basis for the alleged mistake, rescission is not allowed. *See id*. at 293; *see also Cmty. Mut. Ins. Co.*, 804 S.W.2d at 604–05 (stating that "courts will not relieve a party of the effects of a mistake of law," and defining a mistake of law as a "mistake as to the legal consequences of an assumed state of facts").

The allegations in the Chesapeake Plaintiffs' Complaint and the face of the agreements that the Chesapeake Plaintiffs seek to rescind demonstrate that there was no mistake regarding the legal effect of the agreements they now seek to rescind. The agreements demonstrate that the parties were fully aware of the claims of Navasota and that the parties' understanding of the "legal effect" of the

agreements was that Chesapeake Exploration would take title to the properties subject to and burdened by the claims of Navasota.

*Herrmann v. Lindsey* makes clear that the Chesapeake Plaintiffs cannot rely on the "legal effect" exception.   In *Herrmann*, grantors conveyed real property subject to the Edwards Aquifer Act to grantees, with all parties agreeing that grantors would reserve their water permit rights issued by the Edwards Aquifer Authority.   Later, the parties learned that Texas law did not permit such a reservation of rights, and grantors sought rescission. The appellate court denied their request, holding:

> [w]e are not persuaded that the parties' mistake in this case should be treated as a mistake of fact. *Neither party was mistaken as to the facts surrounding the transaction*. . . .   All parties agreed to reserve the irrigation pumping rights to [grantors], knowing that transfers and reservations of pumping rights are controlled by the [Edwards Aquifer Act]. The parties were only mistaken as to the effect of the Act on the attempted reservation to [grantors] in this conveyance. *Such a mistake is a mistake of law and not grounds for rescission of the deed*.

*Herrmann*, 136 S.W.3d at 293 (emphasis added).

Here, the allegations in the Complaint demonstrate that the parties were not mistaken as to the *facts* surrounding the transaction.  The alleged "mistake" related to the pure legal issue that the court of appeals resolved in Navasota's favor.  As a matter of law, that alleged "mistake" cannot support a claim for rescission.

Moreover, a mistaken prediction of the outcome of the Navasota litigation cannot form a basis for rescission.  An "error in predicting a future fact known to

be uncertain is not the kind of mistake which will relieve a party from a contract." *City of Austin v. Cotten*, 509 S.W.2d at 557.

Finally, the parties allocated the risk of an unfavorable outcome in the Navasota litigation in the Purchase and Sale Agreement, providing that Chesapeake Exploration was taking title to the properties "subject to" and "burdened by" the claim of Navasota, and agreeing that Chesapeake Exploration would convey the properties to Navasota in the event Navasota prevailed. Ex. 1, at § 4.5. That agreed allocation of risk also precludes the rescission claim. *Cherry v. McCall*, 138 S.W.3d at 40 ("a party bears the risk of mistake when the risk is allocated to him by agreement").

For all of these reasons, the Chesapeake Plaintiffs' rescission claim based on "mutual mistake" fails to state a claim on which relief may be granted.

## III. The Claim for Rescission and Restitution Based on "Failure of Consideration" Should be Dismissed.

The Chesapeake Plaintiffs allege that because of "Gastar's inability to convey the 1/3 interest in the Hilltop Prospect properties to Chesapeake for the expected duration of the agreements," there was a failure of consideration that requires rescission of the agreements. Complaint, at ¶¶ 31-32. This claim fails for two independent reasons: (1) the Chesapeake Plaintiffs got precisely what they bargained for, with Chesapeake Exploration having agreed to take title to the interests in the oil and gas leases subject to and burdened by the claims of

Navasota, and (2) in any event, there was no *complete* failure of consideration under the agreements, as required in an action for rescission.

### A.   The Facts Pleaded by the Chesapeake Plaintiffs Demonstrate That There Was No Failure of Consideration.

The allegations in the Complaint and the provisions of the agreements referenced in the Complaint not only demonstrate that there was no "mutual mistake," they show that the Chesapeake Plaintiffs got precisely what they bargained for, conclusively negating their "failure of consideration" contention.

Again, the Complaint admits that the Chesapeake Plaintiffs were aware of the Navasota litigation at the time of execution of the agreements and that Chesapeake Exploration agreed that it was acquiring title to the properties "subject to" and "burdened by" Navasota's claim.   Complaint, at ¶ 15; Ex. 1, at § 4.5. Chesapeake Exploration further confirmed in the Purchase and Sale Agreement that it "understands and agrees that the title to the Hilltop Leasehold acreage is burdened by" Navasota's claims in its lawsuit, and that should Navasota prevail in its lawsuit, "Chesapeake will     convey to Navasota Resources L.P. such [Hilltop] leasehold interests . . . to the extent required by [a] judgment or settlement."  Ex. 1, at § 4.5; Complaint, at ¶ 16.

These provisions of the Purchase and Sale Agreement definitively demonstrate that the Chesapeake Plaintiffs got precisely what they bargained for in the event Navasota won the litigation.   When Navasota won the litigation,

Chesapeake Exploration conveyed the properties to Navasota, just as it had agreed to do.  There was no failure of consideration, as a matter of law.

### B.  The Facts Pleaded by the Chesapeake Plaintiffs Demonstrate that the Alleged Failure of Consideration Was Not "Complete," as Required in an Action for Rescission.

Under Texas law, a contract cannot be rescinded without a showing that there was a "complete failure of consideration."  *Gensco, Inc. v. Transformaciones Metalurgicias Especiales*, 666 S.W.2d 549, 553 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd) ("partial failure of consideration is not grounds for rescission of the contract"); *see also Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 320 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Gensco*).  Even if Chesapeake Exploration could overcome the insurmountable obstacles to the claim that the consideration failed for its $5,626,811 purchase of oil and gas properties[7] (which Chesapeake Exploration conveyed to Navasota for $5,009,932 pursuant to the court of appeals' judgment),[8] there still could be no "complete" failure of consideration, since Chesapeake Energy admits that it obtained $76,031,654 worth of common stock in Gastar Ltd. under the Common Share Purchase Agreement.  *See* Complaint, at ¶¶ 13, 15, and 25.  Having alleged that the agreements

---

[7] The Chesapeake Plaintiffs allege in the Complaint that they paid $5,626,811 for the properties.  Complaint, at ¶ 6.

[8] The Chesapeake Plaintiffs allege in the Complaint that Navasota paid them $5,009,932 for the properties in accordance with the court of appeals' judgment. Complaint, at ¶ 22.

constituted a single integrated transaction, and having received all of the consideration called for by the Common Share Purchase Agreement, there can be no "complete failure of consideration."

## IV.   The Unjust Enrichment Claim Should Be Dismissed.

### A.   The Allegations of the Complaint and the Terms of the Agreements Conclusively Negate the Unjust Enrichment Claim.

In support of its unjust enrichment claim, the Chesapeake Plaintiffs allege that the Waco Court of Appeals' judgment upholding Navasota's claim to the oil and gas properties and requiring Chesapeake Exploration to convey them to Navasota rendered "complete performance . . . impossible . . . before Chesapeake was able to realize the benefits it was entitled to under the Joint Operating Agreement and Related Agreements."  Complaint, at ¶ 36.  They also allege that "Chesapeake's mandated conveyance frustrated the purpose of those agreements and/or made it impractical for the parties to perform the agreements."  Complaint, at ¶ 37.  The Chesapeake Plaintiffs assert that "as a result, [the Gastar Defendants] [have] been unjustly enriched at the expense of Chesapeake."  Complaint, at ¶ 38.

As a matter of law, these allegations fail to state a claim on which relief may be granted.  The "mandated conveyance" of the properties by Chesapeake Exploration pursuant to the court of appeals' judgment is precisely what the Purchase and Sale Agreement called for and what the parties bargained for.  Under those circumstances, Texas law precludes an action for unjust enrichment.

21

In *Burlington Northern Railroad Co. v. Southwestern Electric Power Co.*, 925 S.W.2d 92 (Tex. App.—Texarkana), *aff'd*, 966 S.W.2d 467 (Tex. 1998), the court set out the requirements of an action for unjust enrichment in Texas and discussed the impact on an unjust enrichment claim of the express terms of the parties' agreement.  The court said that "[t]he unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another *are not governed by a contract between the contending parties*."  *Id.* at 97 (emphasis added).  "When a defendant has been unjustly enriched by the receipt of benefits *in a manner not governed by contract*, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff."  *Id.* (emphasis added).  "A remedy such as unjust enrichment … is unavailable when a valid, express contract governing the subject matter of the dispute exists."  *Id.*  "The doctrine *does not operate to rescue a party from the consequences of a bad bargain*, and the enrichment of one party at the expense of the other *is not unjust where it is permissible under the terms of an express contract*."  *Id.* (emphasis added).

These principles demonstrate that the Chesapeake Plaintiffs' Complaint fails to state an unjust enrichment claim on which relief may be granted.  The allegations of the Complaint and the terms of the agreements referenced in the Complaint demonstrate that the "mandated conveyance" of the properties by Chesapeake Exploration to Navasota in the court of appeals' judgment was

22

expressly required by the Purchase and Sale Agreement in the event Navasota prevailed in its lawsuit. Ex. 1, at § 4.5. The parties agreed that Chesapeake Exploration was taking title subject to and burdened by the claim of Navasota. *Id.*

Under the principles set out in *Burlington*, an unjust enrichment claim based on benefits allegedly flowing to the Gastar Defendants from the "mandated conveyance" fails as a matter of law. The subject matter of the dispute (conveyance of the properties based on a final decision upholding Navasota's claims) is governed by an express contract between the parties, and any benefits allegedly received by the Gastar Defendants due to the decision on Navasota's claims are permissible under the terms of the Purchase and Sale Agreement.

Though unclear from the Complaint, the Chesapeake Plaintiffs may be attempting to invoke the rule that "[r]ecovery under principles of unjust enrichment is also appropriate when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons." *Burlington*, 925 S.W.2d at 97. They allege that the mandated conveyance of the properties to Navasota rendered "complete performance . . . impossible" and "frustrated the purpose of those agreements and/or made it impractical for the parties to perform the agreements." Complaint, at ¶¶ 36-37.

Yet, the allegations of the Complaint demonstrate that the agreements were fully performed. Gastar LP conveyed the properties to Chesapeake Exploration

23

subject to and burdened by the Navasota claim; Gastar Ltd. sold the stock to Chesapeake Energy; and Chesapeake Exploration complied with its contractual obligation to convey the properties to Navasota following the final decision of the court of appeals that resolved the dispute in Navasota's favor.  Complaint, at ¶¶ 15, 16, and 23.   Performance of the agreements was not rendered impossible or impractical by the court of appeals' judgment; performance actually occurred. Moreover, the purpose of the agreements was not frustrated by the "mandated conveyance" of the properties to Navasota following the court of appeals' decision; to the contrary, the mandated conveyance was expressly required by the Purchase and Sale Agreement in the event Navasota prevailed in its lawsuit.

### B.     The Complaint Shows on its Face That the Unjust Enrichment Claim is Barred by the Statute of Limitations.

Chesapeake's unjust enrichment claim also should be dismissed because the claim is barred by the two-year statute of limitations.  Tex. Civ. Prac. & Rem. Code § 16.003; *Elledge v. Friberg-Cooper Water Supply*, 240 SW.3d 869, 870 (Tex. 2007) ("unjust enrichment claims should fall under the two-year statute."). As confirmed by the allegations of the Complaint, the "mandated conveyance" of the properties that allegedly gives rise to the unjust enrichment claim occurred more than three years before the filing of the Complaint.  Complaint, at ¶ 23.  On its face, the unjust enrichment claim was filed more than two years after it accrued and is barred by the two-year statute of limitations.

24

The Chesapeake Plaintiffs erroneously rely on the parties' Tolling Agreement (Ex. 6), to save the unjust enrichment claim from the limitations bar. Complaint, at n.1.  Yet, the Tolling Agreement only addressed claims asserted in the Chesapeake Plaintiffs cross-action filed in Navasota's lawsuit.  Ex. 6, at ¶ 1. That cross-action asserted only claims for rescission based on mutual mistake and failure of consideration, and not a claim for unjust enrichment.  Ex. 5, at ¶¶ 16-25.

The Tolling Agreement stated that the applicable statute of limitations for "matters raised in the Cross-Action" shall be tolled and that after the applicable tolling period ends, Chesapeake could "re-file the claims contained in the Cross-Action."  Ex. 6, at ¶¶ 1 and 3.  Because the Chesapeake Plaintiffs did not assert a claim for unjust enrichment against the Gastar Defendants in the cross-action, such a claim was not covered by the Tolling Agreement, and thus the running of the statute of limitations was not tolled.  Because the Complaint in this action was filed more than two years after the unjust enrichment claim accrued, that claim is barred by the statute of limitations and should be dismissed.

## CONCLUSION

Chesapeake's Complaint fails to state any claims upon which relief may be granted.  The claims in the Complaint should be dismissed under FED. R. CIV. P. 12(b)(6).

Respectfully submitted,

VINSON & ELKINS, LLP

___*s/ James D. Thompson III*___
James D. Thompson III
  State Bar No. 19918500
  S.D. Bar No. 7562
Guy S. Lipe
  State Bar No. 12394600
  S.D. Bar No. 2031
Holly O. Rumbaugh
  State Bar No.  24046771
  S.D. Bar No. 578128
1001 Fannin St., Suite 2500
Houston, Texas  77002
Telephone: 713-758-4502
Facsimile: 713-615-5765

**ATTORNEYS FOR
THE GASTAR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of November, 2012, a true and correct copy of the foregoing pleading was served on the following counsel via electronic case filing service.

***Attorneys for the Chesapeake Plaintiffs***
Jesse R. Pierce
Pierce & O'Neill, LLP
4203 Montrose Blvd.
Houston, TX 77006

_s/ James D. Thompson III_____
James D. Thompson III